United States District Court
Southern District of Texas
**ENTERED**
October 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| WENDY RENEE VENGLAR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:20-CV-00020 |
| | § | |
| ANDREW M SAUL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Wendy Renee Venglar filed this *pro se* action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny her application for Supplemental Security Income ("SSI"). Now pending are Venglar's and the Commissioner's cross-motions for summary judgment (D.E. 15, 16). Liberally construed, Venglar challenges the Administrative Law Judge's ("ALJ") conclusions at Steps Three, Four, and Five of the sequential evaluation. For the reasons discussed further below, it is respectfully recommended that Venglar's motion (D.E. 15) be denied, the Commissioner's motion (D.E. 16) be granted, and Venglar's cause of action be dismissed.

## I.    JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Venglar resides in Victoria County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(5).

## II.   BACKGROUND & ADMINISTRATIVE RECORD

### a.  *Application and Hearing*

In June 2017, Venglar filed an application for SSI, alleging a disability commencing on April 19, 2017.  (D.E. 13-7 at 2-13).  Venglar claimed that her major depressive disorder, generalized anxiety disorder, migraine headaches, hyperlipidemia, radiculopathy in the cervical region, and right hip pain limited her ability to work.  (*Id.* at 5).   The Commissioner denied Venglar's application both initially and on reconsideration.  (D.E. 13-4 at 13, 27).  In the Disability Determination Explanation at the initial stage, state medical consultant Dr. Roberta Herman concluded that Venglar's only medically determinable physical impairment was a spine disorder, but it was non-severe.  (*Id.* at 6).  As to her mental impairments, state medical consultant Dr. Richard Campa concluded when analyzing the Paragraph B criteria of the Listings that Venglar's anxiety and depression caused moderate limitations in her ability to: (1) interact with others; (2) concentrate, persist, or maintain pace; and (3) adapt or manage herself.  (*Id.* at 6).  Dr. Campa's conclusions when evaluating limitations in the context of Venglar's mental RFC were consistent, finding that she was moderately limited in some areas.  (*Id.* at 9-10).  At the reconsideration stage, state medical consultants Dr. Scott Spoor and Dr. Murray Lerner reached the same conclusions regarding Venglar's physical and mental impairments.  (*Id.* at 20, 22-23).

Venglar requested a hearing before an ALJ.  At the October 11, 2018, hearing, she testified to the following.  Her anxiety and depression began when her son died in 2008. (D.E. 13-3 at 46).  Since then, whenever she tried to have a full-time job, she ended up in

2

the hospital.  (*Id.*).  Her anxiety and depression began when her son died.  (*Id.*).  She lived alone, although her living son came and stayed with her.  (*Id.* at 48).  She was able to take care of household chores when she was not too tired, and she could drive a car, but sometimes had to pull over due to anxiety attacks.  (*Id.* at 48-49).  She was not involved in any social activities, and she had tried to work jobs, but always got fired.  (*Id.* at 49-50).  She could not sit down for long periods of time because she would become anxious. (*Id.* at 52).  Some days were good and some days were bad.  (*Id.* at 54).

In response to the ALJ's hypothetical, a vocational expert testified that a young individual with a high school education and Venglar's work history who would be limited to simple instructions, simple work-related decisions, frequent interaction with supervisors and coworkers, and occasional interaction with the public would be unable to perform Venglar's past relevant work as a waitress.  (*Id.* at 56).  However, the vocational expert stated that a person with those attributes would be able to work as a laundry worker, dishwasher, or grocery packer.  (*Id.* at 56-57).

### b. Medical Records

On September 13, 2015, Venglar visited the emergency room complaining of a migraine headache.  (D.E. 13-8 at 34).  She described the pain as a 10 out of 10 and had photophobia and nausea.  (*Id.* at 34-35).  She was prescribed medication.  (*Id.* at 35-36).

On March 6, 2016, Venglar visited the emergency room complaining of a headache.  (*Id.* at 23).  It caused nausea and the maximum severity was a 6 out of 10.  (*Id.* at 24).  She was prescribed medication.  (*Id.*).

On April 18, 2016, Venglar visited Dr. Grant Henry and reported that her

3

depression and anxiety were much improved when on medication. (*Id.* at 47). She got migraines every few months but had not tried any abortive medications. (*Id.*). Several tests were ordered and she was prescribed medication. (*Id.* at 48-49).

On January 25, 2017, Venglar visited the emergency room complaining of neck pain, a headache, and weakness. (*Id.* at 9). She reported no other issues, had no difficulty with ambulation, and was alert and oriented. (*Id.*). She was instructed to rest and given medication. (*Id.* at 15).

On April 18, 2017, Venglar completed a mental health screening, where she reported depression and anxiety that she was taking medication for. (*Id.* at 55). She reported no problems on medication, but anxiety attacks when she was off her medication. (*Id.*). She attempted to wean herself off medication to see if she still needed it, but began taking it again after an anxiety attack. (*Id.* at 56). She had not been depressed in a while. (*Id.*). Her focus was good, but she got tired more often and certain people made her angry. (*Id.* at 57). She was diagnosed with major depressive disorder, anxiety disorder, and personality disorder. (*Id.* at 59). In an inventory of depression symptoms, Venglar reported mostly mild symptoms, with the exception of having difficulty sleeping. (*Id.* at 70-71).

On May 4, 2017, Venglar attended a mental health appointment where she reported depression and anxiety. (*Id.* at 90). She reported feelings of hopelessness, loss of interest, excessive crying, insomnia, social isolation, decreased ability to concentrate, feeling fatigued, irritable mood, and emotional lability. (*Id.* at 90-91). Due to her anxiety, she also reported fatigue, decreased ability to concentrate, persistent worry,

4

muscle tension or jitters, un-cued panic attacks, sleep disturbances, and irritable mood. (*Id.* at 91).   She had a normal level of personal hygiene, no socially inappropriate behavior, and was calm, although she had a constricted affect and looked irritable.   (*Id.* at 93).   She had no decreased ability to concentrate, no impairment to her memory, and no diminishment in her abstract reasoning.   (*Id.*).   She was assessed to have major depressive disorder and generalized anxiety disorder, but personality disorder was ruled out.   (*Id.* at 94).  Her medications were adjusted.   (*Id.*).

On May 25, 2017, Venglar again had a mental health appointment where she reported depression at a severity of 6 out of 10, insomnia at a severity of 5 out of 10, and anxiety and irritability at a severity of 3 out of 10.   (*Id.* at 80).   She had a normal level of personal hygiene, no socially inappropriate behavior, and was calm, although she had a constricted affect and looked irritable.   (*Id.* at 85).   She had no decreased ability to concentrate, no impairment to her memory, and no diminishment in her abstract reasoning.   (*Id.*).   In an inventory of depression symptoms, Venglar reported worse symptoms with regard to her interest in activities and energy.   (*Id.* at 87-88).

Venglar stated the following in a June 26, 2017, function report.   (D.E. 13-7 at 14-21).   Her illnesses caused her to become tired and led to anxiety attacks.   (*Id.* at 14).   Her mother and family helped take care of her son.   (*Id.* at 15).   She no longer put effort into dressing herself or caring for her hair.   (*Id.*).   She sometimes needed reminders to take medicine.   (*Id.* at 16).   She was able to prepare easy meals daily.   Her chores took longer than they used to and she needed good motivation.   (*Id.*).   She occasionally went outside to walk the dogs and was able to drive a car, although her anxiety was sometimes too

5

bad.  (*Id.* at 17).  She was not able to pay bills because she was unable to keep a job, but she could count change, handle a savings account, and use a checkbook.  (*Id.*). Television was her only hobby, she did not participate in any social activities, and the only places she went on a regular basis were the cemetery and grocery store.  (*Id.* at 18). She had difficulty walking, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.  (*Id.* at 19).  She had been fired from a job due to problems getting along with others.  (*Id.* at 20).  She noted that she used to be able to work, but after the death of her son, she developed severe depression and anxiety that caused her to become overwhelmed, even when on medication.  (*Id.* at 29).

Pamela Shaw, Venglar's mother, also completed a function report, stating the following.  (*Id.* at 30-37).  Venglar lived with her.  (*Id.* at 30).  She became exhausted quickly when trying to complete tasks and became agitated.  (*Id.*).  She went outside every day, although sometimes it took her a while to get out of the house.  (*Id.* at 33). She could go out alone and was able to drive.  Venglar could not hold down a job because she became agitated and irritable very easily.  (*Id.*).  She often watched television and played games on the computer.  (*Id.* at 34).  She used to go out with friends, but no longer did so.  (*Id.*).  She had been fired from a job before because of problems getting along with other people, specifically because she felt she was being bullied and that people were out to get her.  (*Id.* at 36).

On July 12, 2017, Venglar had a mental health appointment where she reported insomnia with a severity of 9 out of 10, anxiety with a severity of 8 out of 10, depression

with a severity of 7 out of 10, and irritability with a severity of 5 out of 10.  (D.E. 13-8 at 125).  Her mood was dull, but her mental status was otherwise unremarkable.  (*Id.* at 131).  In an inventory of depression symptoms, Venglar reported mostly mild symptoms, with the exception of having difficulty sleeping.  (*Id.* at 133-34).

On August 3, 2017, Venglar had a mental health appointment where she reported anxiety with a severity of 8 out of 10, depression and irritability with a severity of 4 out of 10, and insomnia with a severity of 3 out of 10.  (*Id.* at 115).  Her mood was "kind of monotone," but her mental status was otherwise unremarkable.  (*Id.* at 121).  Her medication was adjusted.  (*Id.* at 122).  In an inventory of depression symptoms, Venglar reported mostly mild symptoms, with the exception of having difficulty focusing.  (*Id.* at 123-24).

On September 5, 2017, Venglar had a mental health appointment where she reported depression and anxiety with a severity of 3 out of 10.  (*Id.* at 105).  Her mood was "kind of monotone," but her mental status was otherwise unremarkable.  (*Id.* at 111).  In an inventory of depression symptoms, Venglar reported mostly mild symptoms, with the exception of having difficulty sleeping.  (*Id.* at 113-14).

On September 18, 2017, Venglar visited the emergency room complaining of a headache with a maximum severity of 1 out of 10.  (D.E. 13-9 at 29).  It was made worse by light.  (*Id.*).  She was prescribed medication.  (*Id.* at 32).

On September 19, 2017, Venglar visited the emergency room complaining of a headache.  (*Id.* at 23).  She was given fluids and the headache improved.  (*Id.* at 24).  She was encouraged to pick up her prescription from the previous day.  (*Id.*).

On September 23, 2017, Venglar visited the emergency room complaining of a headache with a maximum severity of 8 out of 10.  (*Id.* at 19).  She was prescribed medication.  (*Id.* at 20).

On September 26, 2017, Venglar visited the emergency room complaining of a headache.  (*Id.* at 14).  During the visit, she was aggressive and became upset, causing the doctor to call security.  (*Id.*).

### c.  *ALJ Decision*

On December 5, 2018, the ALJ issued an opinion, concluding that Venglar was not under a disability since April 19, 2017.  (D.E. 13-3 at 10-22).  At the first step of the sequential evaluation process, the ALJ concluded that Venglar had not engaged in substantial gainful activity since June 1, 2017.  (*Id.* at 12-13).  At the second step, the ALJ concluded that Venglar's anxiety and depression were severe impairments that limited her ability to perform basic work activities. (*Id.* at 13).

At the third step, the ALJ concluded that Venglar did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.* at 13-15).  Specifically as to Venglar's mental impairments, the ALJ noted that, in order to meet the Paragraph B criteria, the mental impairments must result in at least one extreme limitation or two marked limitations in a broad area of functioning.  (*Id.* at 15).   The ALJ concluded that Venglar had only moderate limitations in several areas, and thus did not meet the Paragraph B criteria.  (*Id.* at 14-15).  The ALJ also concluded that Venglar did not meet the Paragraph C criteria.  (*Id.* at 15).  The ALJ noted that the Paragraph B criteria were not the same as

the RFC determination, which only applied to steps four and five of the sequential evaluation.  (*Id.*).

The ALJ concluded that Venglar had the residual functional capacity ("RFC") to perform work at all exertional levels, but she could: (1) understand, remember, and carry out simple instructions; (2) use judgment to make simple work-related decisions; (3) frequently interact with supervisors and coworkers; and (4) occasionally interact with the public.  (*Id.* at 16).

In reaching this conclusion, the ALJ found that Venglar's statements regarding the intensity, persistence, and limiting effects of her physical conditions and migraines were not entirely consistent with the medical and other evidence in the record.  (*Id.* at 16-17). The ALJ summarized several of Venglar's mental health appointments over the course of 2017.  (*Id.* at 17-18).  The ALJ gave great weight to the opinions of state consultants Dr. Herman and Dr. Spoor, concluding that the record supported a finding of no medically-determinable physical impairment.  (*Id.* at 18).  However, the ALJ gave little weight to the opinions of state consultants Dr. Campa and Dr. Lerner because they were not able to consider all of the evidence, and the evidence received after their reviews supported greater limitations for Venglar.  The ALJ gave some weight to Venglar's mother, but concluded that her statements did not support greater limitations than those included in the RFC determination.  (*Id.*).  Ultimately, the ALJ concluded that Venglar's medical records were relatively unremarkable and that any limitations suggested by the records were reflected in the limitations acknowledged in the RFC determination.  (*Id.* at 19). The ALJ also considered the type of treatment Venglar had received, whether the record

reflected that medication was effective in controlling her symptoms, and her ability to engage in activities of daily living. (*Id.* at 19-20).

At step four, the ALJ concluded that, based on her RFC, Venglar was unable to perform any past relevant work. (*Id.* at 20). However, at step five, the ALJ concluded that, based on her RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that she could perform. (*Id.*). Specifically, the ALJ concluded that Venglar would be able to work as a laundry worker, dishwasher, or grocery packer. (*Id.* at 21). Thus, the ALJ concluded that Venglar was not under a disability since June 1, 2017. (*Id.*).

The Appeals Council denied Venglar's request for review of the ALJ's decision. (D.E. 13-3 at 2-6).

## III. DISCUSSION

In her *pro se* briefing, Venglar generally argues that she meets all the criteria necessary to qualify for benefits, and highlights several factors that she contends prove her eligibility for benefits. (D.E. 15 at 1). These factors include that she has been out of work for three years, has been diagnosed with a severe mental illness, has had multiple emergency room visits for migraines and anxiety attacks, and has difficulty functioning in everyday life. (*Id.*). *Pro se* briefing must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *pro se* parties must brief arguments in order to

preserve them.  *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).[1]  Venglar has not raised any specific argument regarding which of the ALJ's conclusions she challenges or why.   Liberally construed, Venglar challenges every factor that led to the ALJ's conclusion that she was not disabled, and the Commissioner has raised argument on each step of the sequential analysis where the ALJ reached a conclusion adverse to Venglar. Accordingly, this memorandum addresses each of these steps as well.

> a. *Whether substantial evidence supported the ALJ's conclusion at Step Two that anxiety and depression were Venglar's only severe impairments*

The Commissioner argues that the ALJ fully evaluated Venglar's impairments and correctly determined that her only severe impairments were anxiety and depression. (D.E. 16-1 at 5).  The Commissioner contends that the medical evidence did not support a finding that any other impairments were severe.  (*Id.*).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The burden has been described as more than a scintilla, but lower than a preponderance.  *Id.*

---

[1] Although *Yohey* applies to the preservation of issues before the Fifth Circuit under the Federal Rules of Appellate Procedure, this social security appeal is procedurally similar to appellate court proceedings.  It is an appeal of the administrative court's decision and is to be decided "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

The ALJ has a duty to fully and fairly develop the facts. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, the ALJ does not defer or give any specific evidentiary weight to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In determining what weight to give each medical opinion or prior administrative medical finding, the ALJ considers several factors, including consistency and supportability. *Id.* The ALJ is not required to adopt any prior administrative medical findings, but must consider that evidence. *Id.* §§ 404.1513a(b)(1), 416.913a(b)(1). Further, the ALJ should not substitute his lay opinion for the medical opinion of experts, especially in cases of mental disability. *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018).

In order to be found disabled, a claimant must have a severe impairment that is expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 416.905(a); 416.909; 416.920(a), (c). This means that they must have an impairment or combination

12

of impairments that significantly limits their physical or mental ability to do basic work activities. *Id.* Any impairment must be established by objective medical evidence. 20 C.F.R. § 416.921. When evaluating mental impairments, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine if they have a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If the ALJ concludes that a medically determinable mental impairment exists, the ALJ must then rate the degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2).

Here, substantial evidence supported the ALJ's conclusion that anxiety and depression were Venglar's only severe impairments. First, there is exceedingly little medical evidence in the record regarding Venglar's hyperlipidemia, radiculopathy in the cervical region, and right hip pain, which were three of her four claimed disabilities other than anxiety and depression. (D.E. 13-7 at 5); 20 C.F.R. § 416.921 (stating that impairments must be established by objective medical evidence). As to her fourth claimed disability, migraines, there is a fair amount of medical evidence in the record indicating that she occasionally suffered migraines over a period of several years. (*See, e.g.,* D.E. 13-8 at 34, 47; D.E. 3-9 at 14, 19, 24, 29). However, the reported severity of the migraines ranged significantly, and some were improved with fluids or medication. (D.E. 13-8 at 23, 34-35; D.E. 13-9 at 24, 29). Moreover, after reviewing the evidence, the state medical consultants concluded that Venglar's only severe impairments were anxiety and depression. (D.E. 13-4 at 6, 19). The ALJ must consider these opinions. 20 C.F.R. § 416.913a(b)(1). Finally, at the hearing, Venglar agreed that, although she had

also alleged migraine headaches and other impairments, her claim was primarily based on her anxiety and depression. (D.E. 13-3 at 45-46). Accordingly, based on the record as a whole, substantial evidence supported the ALJ's conclusion that Venglar's only severe impairments were anxiety and depression.

> b. *Whether substantial evidence supported the ALJ's conclusion at Step Three that Venglar's impairments did not meet or equal a listed impairment*

The Commissioner argues that the ALJ properly considered the relevant listings and concluded that Venglar only had moderate limitations in several of the categories, which was insufficient to meet the Paragraph B or Paragraph C criteria. (D.E. 16-1 at 6).

In order for depression or anxiety to meet or equal a listed impairment, the claimant must establish either the Paragraph B or Paragraph C criteria. 20 C.F.R. Part 404, Sub. P, App'x 1 § 12.04, 12.06.

Paragraph B of the Listing of Impairments for mental disorders provides four areas of mental functioning that are relevant to determining if an applicant is disabled, including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, and maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Sub. P, App'x 1 § 12.00(E). In order to satisfy the Paragraph B criteria under the applicable five-point limitation scale, an applicant must have an extreme limitation in one area of mental functioning or marked limitations in two areas of mental functioning. *Id.* § 12.00(F)(2). For the Paragraph B factors that contain multiple considerations, "the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental

functioning." *Id.* § 12.00(F)(3)(f).

Paragraph C offers an alternative to the Paragraph B requirements. *Id.* § 12.00(G)(1). To meet the Paragraph C requirements, a claimant's mental disorder must be serious and persistent, meaning that there is a medically documented history of the mental disorder over a period of at least two years. *Id.* § 12.00(G)(2)(a). Moreover, the claimant must show evidence: of medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) that the claimant has a minimal capacity to adapt to changes in their environment or to demands that are not already a part of their daily life. *Id.* § 12.00(G)(2)(b), (c).

Here, substantial evidence supported the ALJ's conclusion that Venglar's impairments did not meet or equal a listed impairment. The ALJ concluded that Venglar had only moderate impairments in several of the relevant areas of mental functioning, which was insufficient to meet the Paragraph B criteria, which require at least one extreme limitation or two marked limitations. (D.E. 13-3 at 14-15); 20 C.F.R. Part 404, Sub. P, App'x 1 § 12.00(F)(2). Moreover, the ALJ concluded that the medical evidence in the record did not establish the existence of the Paragraph C criteria either. (D.E. 13-3 at 15); 20 C.F.R. Part 404, Sub. P, App'x 1 § 12.00(G)(2)(a). The medical evidence in the record supports these conclusions.

First, as to the Paragraph B criteria, the state medical consultants at the initial and reconsideration stages both concluded that Venglar had only moderate limitations in several areas of functioning, but no extreme or marked limitations. (D.E. 13-4 at 6, 9-10,

22-23).   The records from Venglar's mental health appointments consistently noted that she had no decreased ability to concentrate, no impairment to her memory, and no diminishment in her abstract reasoning, and that her mental status was unremarkable. (D.E. 13-8 at 85, 93, 105, 111, 121, 131).   In her own evaluation of her symptoms of depression, Venglar often identified only mild symptoms outside of difficulty sleeping. (*Id.* at 87-88, 113-14, 123-24, 133-34).   Given this evidence, the ALJ's conclusion that Venglar's impairments did not meet the Paragraph B criteria is supported by substantial evidence, which requires only more than a scintilla and less than a preponderance.   *Perez*, 415 F.3d at 461.

Second, as to the Paragraph C criteria, there is no evidence in the record indicating that Venglar had medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that was ongoing, diminished her symptoms, and was medically documented for over two years.   20 C.F.R. Part 404, Sub. P, App'x 1 § 12.00(G)(2)(a). The medical evidence indicated that she had occasional appointments with mental health professionals between April 2016 and September 2017.   (D.E. 13-8 at 47, 105).   This time period does not meet the two-year requirement.   Accordingly, substantial evidence supported the ALJ's conclusion that the Paragraph C criteria did not apply.

### c.   *Whether substantial evidence supported the ALJ's RFC determination*

The Commissioner argues that the medical evidence supported the ALJ's RFC determination because Venglar's subjective complaints of disabling impairments were not supported by the record.   (D.E. 16-1 at 7).   The Commissioner argues that the ALJ properly considered Venglar's subjective complaints, but found that her statements

16

concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.  (*Id.* at 7-8).  The Commissioner argues that the ALJ's conclusion was supported by the objective medical evidence, the function reports, and the opinion evidence.  (*Id.* at 8-12).

If the ALJ finds that a claimant has a severe mental impairment that does not meet or equal an impairment listed in the appendix to the regulations, the analysis then moves to an RFC assessment.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).  Thus, before going from step three to step four, the ALJ assesses a claimant's RFC.  *Perez*, 415 F.3d at 461.  RFC "is a determination of the most the claimant can still do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62.  When assessing a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations that result from their symptoms.  20 C.F.R. § 416.945(a)(3).  When evaluating a claimant's mental RFC, the ALJ considers factors "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting."  *Id.* § 416.945(c).

While the ALJ must consider a claimant's statements about their symptoms and how the symptoms affect their activities of daily living and ability to work, there must be objective medical evidence showing that the claimant has a medical impairment that could reasonably be expected to produce those symptoms.  20 C.F.R. § 416.929(a).  Ultimately, the RFC determination is the sole responsibility of the ALJ, who must

17

consider the medical evidence to draw a conclusion about whether the claimant is able to work.  *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

Here, substantial evidence supported the ALJ's conclusion regarding Venglar's mental RFC.  Specifically, the ALJ concluded that Venglar could perform work at all exertional levels, but was limited to only simple instructions, simple work-related decisions, frequent interaction with supervisors and coworkers, and occasional interaction with the public.  (D.E. 13-3 at 16).  To reach this conclusion, the ALJ found that Venglar's subjective complaints were only partially consistent with the objective medical evidence in the record.  (*Id.* at 16-17).  He extensively reviewed the medical records and opinion evidence in order to reach this conclusion.  (*Id.* at 17-18).  In particular, the ALJ noted that the mental health records consistently reflected that Venglar was able to concentrate, did not have any memory impairment, was fully oriented, had fair insight and judgment, had no intellectual difficulties, and that her mental status findings were normal.  (*Id.*).  As noted above, the ALJ's summary of the evidence is an accurate representation of the medical records.  (*See* D.E. 13-8 at 85, 93, 105, 111, 121, 131).  The ALJ also considered Venglar's statements regarding her limitations and the function report completed by her mother, but accurately summarized their statements regarding what Venglar could do, which included preparing meals, walking the dogs, driving a car, and manage financial decisions.  (D.E. 13-3 at 18-19; D.E. 13-7 at 17-18).

Under these circumstances, substantial evidence supported the ALJ's conclusion that Venglar's subjective complaints were only partially consistent with the objective medical evidence in the record.  *See* 20 C.F.R. § 416.929(a) (stating that a claimant's

statements about their symptoms and how the symptoms affect their activities of daily living must be reasonably supported by objective medical evidence).   As a result, substantial evidence supported the limitations the ALJ incorporated into his RFC finding.

>    *d. Whether substantial evidence supported the ALJ's conclusion at Step Five that Venglar is able to do work in the national economy that exists in significant numbers*

The Commissioner argues that the ALJ properly concluded that Venglar was able to perform other work because the hypothetical posed to the vocational expert was consistent with the limitations accepted as true by the ALJ.  (D.E. 16-1 at 13).   The Commissioner argues that, based on the hypothetical that was consistent with Venglar's limitations, the vocational expert concluded that there was work available in the national economy.  (*Id.*).

When determining whether a claimant can perform other relevant work at step five, an ALJ may rely upon a vocational expert's testimony, provided that the record reflects an adequate basis for doing so.  *Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000).  The issue at step five is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

Here, substantial evidence supports the ALJ's conclusion that Venglar is able to do work in the national economy that exists in significant numbers because the vocational expert provided several potential jobs and the ALJ's hypothetical question incorporated the disabilities recognized by the ALJ.  Based on her depression and anxiety, the ALJ concluded that Venglar had moderate limitations in her ability to: (1) understand,

remember, and apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage herself. (D.E. 13-3 at 14-15). The ALJ incorporated these limitations into his hypothetical by requiring jobs with only simple instructions, simple work-related decisions, and frequent interaction with supervisors and coworkers, but only occasional interaction with the public. (*Id.* at 56). Taking account of these limitations, the vocational expert testified that the hypothetical person could work as a laundry worker, dishwasher, or grocery packer. (*Id.* at 56-57). The ALJ was allowed to rely on the vocational expert's testimony to reach his conclusion at Step Five that Venglar was able to do other work in the national economy. *Carey*, 230 F.3d at 145-47. Accordingly, substantial evidence supported this finding.

        *e. New evidence*

Venglar has submitted several new medical records. These include additional records related to her emergency room visits for migraines, a record related to neck pain, EMS records from April 25, 2017, when Venglar had an anxiety attack, and test results showing several small-to-moderate disk bulges in her back. (D.E. 17-1 at 57-58; D.E. 18-1 at 2-14). The Court may remand the case for further proceedings if there is additional evidence that is new and material, and good cause exists for the failure to present the evidence at the administrative level. 42 U.S.C. § 405(g). The new evidence that Venglar submitted is not material and does not affect the analysis under any of the five steps in the sequential evaluation process. To the extent that the evidence relates to Venglar's anxiety, it is consistent with the records considered by the ALJ and primarily relates to the same medical visits. To the extent that the evidence relates to her

migraines, neck pain, and back pain, the records do not materially affect the ALJ's conclusion that these were not severe impairments.  Lastly, Venglar has not shown good cause why these records were not presented at the administrative level because, like the records that were submitted to the ALJ, they are from the same time 2016-17 time period. Accordingly, a remand for further proceedings based on new evidence would be inappropriate here.

## IV.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Venglar's motion for summary judgment (D.E. 15) be DENIED, the Commissioner's motion for summary judgment (D.E. 16) be GRANTED, and Venglar's cause of action be DISMISSED.

Respectfully submitted this 29th day of October, 2020.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).